## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

DENNIS COOK, as an individual and as a representative of the classes,

           Plaintiff,

v.

RBS CITIZENS, N.A., d/b/a CITIZENS BANK and CITIZENS BANK OF PENNSYLVANIA,

           Defendant.

C.A. NO. 1:11-cv-00268-M-DLM

**FIRST AMENDED CLASS ACTION COMPLAINT
(JURY TRIAL DEMANDED)**

Pursuant to the Court's Text Order in the above-captioned action dated November 22, 2011, Plaintiff Dennis Cook ("Plaintiff"), by and through his attorneys Nichols Kaster, PLLP, and on behalf of himself, the Putative Classes set forth below, and in the public interest, brings the following First Amended Complaint against RBS Citizens, N.A. ("Defendant" or "Citizens"):

### PRELIMINARY STATEMENT

1.    Plaintiff and the Putative Class members have mortgage loans or lines of credit secured by residential property, and were required to purchase flood insurance by Defendant.

2.    As alleged below, Defendant unfairly, deceptively, and unlawfully forced Plaintiff and other Putative Class members to purchase and maintain flood insurance in amounts greater than required by law, greater than required by their mortgage agreements, and greater than Defendant's financial interest in their property, without justification.

3.       Defendant engaged in this conduct in bad faith, knowing that its actions were contrary to applicable law, reasonable commercial standards of fair dealing, and the reasonable expectations of borrowers upon entering into their mortgage agreements.

4.       Based on Defendant's conduct as described herein, Plaintiff asserts claims against Defendant for (1) violation of the Truth In Lending Act ("TILA"); (2) breach of contract and breach of the covenant of good faith and fair dealing; and (3) violation of the New York Deceptive Practices Act ("DPA").

5.       Plaintiff asserts these claims on behalf of two proposed classes of Citizens borrowers.  Plaintiff asserts his federal TILA claim (Count 1) and common law breach of contract and breach of covenant of good faith and fair dealing claim (Count 2) on behalf of a Putative Nationwide Class consisting of all persons who were required by Defendant, during the applicable limitations period,[1] to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of their property, as a condition of any residential mortgage loan or line of credit secured by such property, where such coverage was not required upon origination of the mortgage loan or line of credit.

6.       In addition, Plaintiff asserts his DPA claim (Count 3) on behalf of a Putative New York Class consisting of all persons who were required by Defendant, on or before July 1, 2005, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of their property, as a condition of any residential mortgage loan or line of credit secured by such

---

[1] The statute of limitations on Plaintiff's TILA claim is one year.  *See* 15 U.S.C. § 1640(e). The statute of limitations on Plaintiff's contract claim is six years.

property, where such coverage was not required upon origination of the mortgage loan or line of credit.

7.      Plaintiff and the Putative Classes seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for Defendant's unlawful conduct, as described herein.

## THE PARTIES

8.      Individual and representative Plaintiff Dennis Cook resides in the County of Onondaga, State of New York.  Plaintiff is a member of the Putative Classes as defined below.

9.      Defendant Citizens is a national banking association headquartered in Rhode Island.  Citizens does business in the State of Rhode Island and several other states throughout the country, including New York.

## JURISDICTION AND VENUE

10.      The Court has federal question jurisdiction over Plaintiff's TILA claim pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.       In addition, the Court has original jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of New York, and Defendant is a citizen of Rhode Island.  The amount in controversy in this action exceeds $5,000,000.00, and there are more than 100 members of each of the Putative Classes.

12.     Venue is proper in the United States District Court, District of Rhode Island, pursuant to 28 U.S.C. § 1391, because Defendant resides in Rhode Island, and a substantial part of the events giving rise to Plaintiff's claims arose in Rhode Island.

## FACTUAL ALLEGATIONS

13.     On or about May 6, 2003, Plaintiff obtained a line of credit from Charter One Bank, N.A. ("Charter One") with a maximum available credit limit of $39,500, which was secured by a mortgage on his residential property.  Citizens acquired Plaintiff's line of credit in 2004, and it is the current lender-in-interest.[2]

14.     Because Plaintiff's home falls within a Special Flood Hazard Area ("SFHA"), federal law requires that he maintain flood insurance on his home as a condition of any loan or line of credit secured by his property.  For loans, this coverage must be maintained "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act, ***whichever is less***."  42 U.S.C. § 4012a(b)(1) (emphasis added).  For lines, the required amount of coverage is equal to "the total amount of the line, the value of the improved property or the maximum amount of flood insurance coverage available, ***whichever is less.***"  *Hofstetter v. Chase Home Fin., LLC,* No. 10-1313, 2010 WL 3259773, at *7-10 (N.D. Cal. Aug. 16, 2010) ("*Hofstetter I*") (emphasis added); *accord*, *Hofstetter v. Chase Home Fin., LLC,* 751 F. Supp. 2d, 1116, 1126-27 (N.D. Cal. 2010) ("*Hofstetter II*").

15.     Upon originating his line of credit, Plaintiff received and signed a "Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance" ("Flood

---

[2] Plaintiff also has a mortgage loan with M & T Bank ("M & T"), which is secured by the same residential property as his Citizens line of credit.  As of December 17, 2010, the principal balance on Plaintiff's M & T mortgage was approximately $17,000.

Hazard Notice").  *See Exhibit 1.*  This Flood Hazard Notice informed Plaintiff that his residence was located in a SFHA, indicated that he was required to maintain adequate flood insurance, and stated that "[a]t a minimum, flood insurance purchased must cover **the lesser of**: (1) the outstanding principal balance of the loan; or (2) the maximum amount of coverage allowed for the type of property under the NFIP." (emphasis added).

16.    Upon originating his line of credit, Plaintiff also received and signed a "Credit Line Mortgage" ("Mortgage").  *See Exhibit 2.*  Paragraph 5 of the Mortgage states that Plaintiff is obligated to "keep the Property insured against loss of fire, flood, theft and other hazards . . ." and that he must maintain such insurance "in the amounts and for the periods that Lender requires."  It continues to explain that "if mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage **to protect Lender's rights in the Property** according to the terms of this Security instrument." (emphasis added).[3]

17.    At the time Plaintiff originated his line of credit, he maintained $102,500 worth of flood insurance on his property (an amount sufficient to protect his lender's interest under both his line of credit and his mortgage loan), and he continued to maintain flood insurance coverage in an amount sufficient to protect the interest of his lenders thereafter. No additional coverage was required by Charter One upon originating Plaintiff's line of credit and no additional coverage was required by Citizens upon initially acquiring the line of credit.

---

[3] Plaintiff's Mortgage does **not** state in Paragraph 5 (or anywhere else) that the lender's insurance requirements can change.  In this regard, Plaintiff's Mortgage differs from the current Fannie Mae/Freddie Mac Single Family Uniform Instrument for New York, which states as follows in the section of the document pertaining to insurance: "What Lender requires pursuant to the preceding sentences can change during the term of the Loan."  *See Exhibit 3, ¶ 5.*

18.     On December 19, 2010, several years *after* acquiring Plaintiff's line of credit, Defendant sent Plaintiff a form letter ("Initial Form Letter") claiming that he had "a deficiency for flood coverage in the amount of $54,100[,]" and further claiming that he was required to obtain coverage in an amount at least equal to "100% of the replacement cost of the structure or the maximum limit of coverage available for the particular type of property under the Flood Disaster Protection Act." *See Exhibit 4.*

19.     This Initial Form Letter was deceptive and misleading.   Defendant's requirement is inconsistent with federal law because it does not give the borrower the option of insuring to the total amount of the line.  Further, Plaintiff's Mortgage Documents[4] do not specify such a coverage requirement, and no such requirement was imposed when Plaintiff originated his line of credit.  Conspicuously, Defendant's Initial Form Letter did not explain why Plaintiff's existing amount of flood insurance was suddenly deficient.

20.     The Initial Form Letter stated that if Plaintiff did not cure this alleged "deficiency" in his flood insurance coverage, Defendant would procure additional coverage for him and add the premium cost to his principal balance.  In addition, the Initial Form Letter indicated that the insurance coverage purchased by Defendant likely would be more expensive than flood insurance coverage purchased by Plaintiff from an agent or insurance company of his choice.

21.     Defendant subsequently sent Plaintiff another form letter dated February 13, 2011, entitled "Flood Insurance Deficiency Notification" ("Form Deficiency Notification"). *See Exhibit 5.*  In this Form Deficiency Notification, Defendant informed Plaintiff that it had

---

[4] All documents received and/or signed upon origination of Plaintiff's line of credit, including his Mortgage and Flood Hazard Notice, are collectively referred to herein as "Mortgage Documents."

purchased flood insurance coverage for Plaintiff's property in the amount of $54,100. Defendant indicated that the cost of this one-year policy was $487, and further indicated that the "additional cost has been added to [Plaintiff's] principal balance." This letter also restated that Plaintiff was required to maintain flood insurance in an amount at least equal to "100% of the replacement cost of the structure or the maximum limit of coverage available for the particular type of property under the Flood Disaster Protection Act."

22.     Defendant's Form Deficiency Notification also was deceptive and misleading. Under the terms of the Plaintiff's Mortgage, Defendant may only force-place flood insurance **to protect Lender's rights in the Property**. Defendant's rights in Plaintiff's property extend only so far as its financial stake in the property, *i.e.*, the total amount of Plaintiff's line. Similarly, federal law only authorizes lenders to force-place coverage to the extent **required** by federal law and does not give lenders a blank check to force-place excess coverage. *See* 42 U.S.C. §§ 4012a(e)(1)–(2) ("[If] the lender or servicer for the loan determines that the building . . . is covered by such insurance in an amount less than the amount **required** for the property . . . the lender or servicer for the loan shall purchase the insurance on behalf of the borrower") (emphasis added)). Moreover, the insurance policy document attached to the Form Deficiency Notification expressly stated: "THIS INSURANCE WILL NOT PROVIDE AN AMOUNT OF COVERAGE GREATER THAN THE NET AMOUNT YOU OWE ON THE MORTGAGE."

23.     At the time of Defendant's letters, Plaintiff already was maintaining flood insurance that was more than sufficient to satisfy federal requirements and more than sufficient to cover his available credit line (as well as his first mortgage with M & T).

24.     Defendant knew or should have known that Plaintiff was not "required" to purchase additional flood insurance for his home, as evidenced by, *inter alia*, the following facts:

> a)  Federal law does not require flood insurance in excess of the total amount of funds extended;
>
> b)  Plaintiff's Mortgage Documents do not require additional flood insurance;
>
> c)  Charter One did not require flood insurance in excess of the amount of funds extended upon originating Plaintiff's line of credit;
>
> d)  Defendant held and serviced Plaintiff's line of credit for more than five years, without ever claiming that Plaintiff was "required" to obtain flood insurance for the full replacement cost value of his home; and
>
> e)  Defendant did not and cannot identify any changes in federal law, the Mortgage Documents, or the circumstances surrounding the extension of credit that justified Defendant's representation that Plaintiff's coverage suddenly was not adequate and was less than the coverage required.

25.     As a result of Defendant's conduct, Plaintiff was wrongfully charged $487 for unnecessary and unlawful forced-placed flood insurance, plus interest on this amount.[5]

26.     When Plaintiff contacted Defendant by phone to dispute the force-placed insurance and request reversal of the charges imposed as a result thereof, Defendant told Plaintiff that the only way to avoid such charges would be to pay off the remaining balance and close his line of credit.

---

[5] By February 28, 2010, the charges had accrued $0.55 in interest.

27.     In order to rid himself of these charges and Defendant's burdensome and unjustified flood insurance requirements, Plaintiff subsequently closed his line of credit in February of 2011.  At that time, Defendant charged him a $51 closing fee, and only partially reimbursed him in the amount of $413 for the flood insurance-related charges made on his line of credit.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

29.     Plaintiff asserts his TILA claim in Count 1 and his contract claim in Count 2 on behalf of a Putative Nationwide Class defined as follows:

> **Proposed Nationwide Class:**  All persons who were required by Defendant, during the applicable limitations period, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of their property, as a condition of any residential mortgage loan or line of credit secured by such property, where such coverage was not required upon origination of the mortgage loan or line of credit.

30.     Plaintiff asserts his DPA claim in Count 3 on behalf of a Putative New York Class defined as follows:

> **Proposed New York Class:**  All persons who were required by Defendant, on or before July 1, 2005, to purchase or maintain flood insurance for their property in an amount at least equal to the National Flood Insurance Program maximum or the replacement cost value of their property, as a condition of

any residential mortgage loan or line of credit secured by such property, where such coverage was not required upon origination of the mortgage loan or line of credit.

31.     Numerosity:   The Putative Classes are so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes that during the relevant time period, thousands of Defendant's customers satisfy the definition of the Putative Classes.

32.     Typicality:     Plaintiff's claims are typical of the members of the Putative Classes.  Plaintiff is informed and believes that his Mortgage Documents were typical of those of other Putative Class members; that the Form Letters he received were typical of those received by the other Putative Class members; that Defendant treated him consistent with other Putative Class members in accordance with Defendant's uniform policies and practices; and that it was typical for Defendant to require its customers to purchase and maintain flood insurance in an amount greater than that required by law, greater than that required by their Mortgage Documents, and greater than that required to insure the amount of funds extended, without justification.

33.     Adequacy:     Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

34.     Commonality:   Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

a)   whether federal law requires Defendant's customers to purchase and/or maintain flood insurance in amounts greater than necessary to secure the amount of funds extended;

b)   whether Defendant has a pervasive policy and practice of misrepresenting to customers that federal law requires flood insurance or additional flood insurance on loans or lines of credit for which flood insurance or additional flood insurance is not required by law;

c)   whether the Mortgage Documents relied upon by Defendant authorize Defendant to demand and/or force-place flood insurance in amounts greater than necessary to secure the amount of funds extended;

d)   whether Defendant's Form Letters are false, deceptive, and/or misleading;

e)   whether Defendant violated the TILA by misrepresenting customers' flood insurance requirements, by changing its flood insurance requirements without proper notice and consent, and/or by failing to make proper finance charge disclosures or other disclosures in connection with flood insurance;

f)   whether Defendant owes its customers a duty of good faith and fair dealing and/or has an obligation to avoid creating situations where properties are over-insured, and if so, whether Defendant breached this duty and/or obligation by, *inter alia*, demanding flood insurance in amounts greater than necessary to secure the amount of funds extended and greater than required by federal law;

g)   whether Defendant breached its mortgage agreements with customers by demanding unauthorized amounts of flood insurance or amounts that were not properly and adequately disclosed;

h)   whether Defendant's conduct as described herein violates the DPA;

i) the appropriateness and proper form of any declaratory or injunctive relief;

j) the appropriateness and proper measure of monetary and other damages sustained by the Putative Classes; and

k) the appropriateness and proper measure of any statutory damages, penalties, or other remedies.

35.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual class members would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant.  Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

36.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

37.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary flood insurance premiums and related charges that are readily calculable from Defendant's records and other class-wide evidence.  Members of the Putative Classes do not have an interest in pursuing separate individual actions against

Defendant, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

38.     Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 23. The names and addresses of the Putative Class members are available from Defendant's records.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE TRUTH IN LENDING ACT ("TILA")**
**15 U.S.C. § 1601, *et seq.***

39.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

40.     Defendant is a "creditor" as defined by the TILA, 15 U.S.C. § 1601 *et seq.*, and is subject to the requirements of the TILA and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

41.     Defendant has violated the TILA in at least three respects, as explained in Plaintiff's Objection to Defendant's Partial Motion to Dismiss (ECF No. 12) and Plaintiff's supporting Memorandum of Law (ECF No. 12-1).

42.     First, Defendant unlawfully changed the terms of Plaintiff's HELOC by unilaterally increasing the required amount of flood insurance coverage after origination. *See Hofstetter II*, 751 F. Supp. 2d at 1124-28 & 1130 ("By making this move, defendants

exposed themselves to . . . TILA[.]"); *Wulf v. Bank of America, N.A.*, No. 10-5176, -- F. Supp. 2d --, 2011 WL 2550628, at *12-13 (E.D. Pa. Apr. 15, 2011) ("Plaintiff's TILA claim survives the motion to dismiss. . . . Plaintiff's TILA claim is based on the change in flood insurance requirements[.]").   Under 12 C.F.R. § 226.5b(f)(3), lenders are prohibited from changing "any" term of a home equity credit plan.  This "change of terms prohibition applies to all features of a plan, not only those required to be disclosed" under the TILA.  12 C.F.R. pt. 226, Supp. I, § 5b(f)(3), cmt. 1; *see also* 15 U.S.C. § 1647(c) ("No open end consumer credit plan under which extensions of credit are secured by a consumer's principal residence may contain a provision which permits a creditor to change any term required to be disclosed under section 1637a(a) of this title *or any other term* . . . .") (emphasis added).[6]

43.     Second, even if such a change of terms were not *per se* unlawful, Defendant failed to provide proper notice of any change of terms.  If Defendant wanted to increase its flood insurance requirements, it was obligated to disclose that it was proposing a change of terms of Plaintiff's credit plan under 12 C.F.R. § 226.9(c)(1), and obtain Plaintiff's written consent to the change under 12 C.F.R. § 226.5b(f)(3)(iii).  Instead, Defendant pretended that

---

[6] It is no defense that Plaintiff's mortgage gives the lender discretion to determine the amount of coverage that is required.  *See* 12 C.F.R. pt. 226, Supp. I, § 5b(f)(3), cmt. 1 ("A creditor may not include a general provision in its agreement permitting changes to any or all of the terms of the plan.  For example, creditors may not include 'boilerplate' language in the agreement stating that they reserve the right to change the fees imposed under the plan."); *accord*, 15 U.S.C. § 1647(c).  In any event, Plaintiff's mortgage did not contain an express reservation of rights to change the amount of flood insurance that was required.  *See supra* at ¶ 16 n.3 & Ex. 3 at ¶ 5.  Further, although "[a] creditor . . . may provide in the initial agreement that specified changes will occur if a specified event takes place," (12 C.F.R. § 226.5b(f)(3)(i)), Plaintiff's mortgage did not identify any specific triggering events that would precipitate a change in flood insurance requirements, much less specify how the lender's flood insurance requirements would change upon the happening of such unidentified events.  Moreover, Defendant's boilerplate flood insurance notices failed to identify any change in circumstances that precipitated RBS's arbitrary increase in its flood insurance requirements.  *See supra* at ¶¶ 19, 24(e).

its onerous flood insurance demands were consistent with Plaintiff's existing mortgage. This also was unlawful under TILA. *See Hofstetter II*, 751 F. Supp.2d at 1128 ("[T]his order also finds that a plausible claim under 12 C.F.R. 226.9(c) has been stated. This particular claim is premised on the allegation that [defendant] 'fail[ed] to provide proper notice, after origination, that [it] was amending the terms of the credit plans as described in the deeds of trust[.]'"); *Wulf*, 2011 WL 2550628, at *12 ("Plaintiffs have stated a claim that they were entitled to new disclosure under TILA.").[7]

44.    Third, Defendant also violated the TILA by misrepresenting the terms of Plaintiff's mortgage relating to flood insurance. The most fundamental requirement of the Truth-In-Lending Act – as the name of the Act implies – is to provide borrowers with clear

---

[7] Under the TILA and its accompanying regulations, lenders are required to disclose "[t]he conditions under which a finance charge may be imposed" and also identify any other charges that may be imposed as part of a home equity credit plan. 15 U.S.C. § 1637(a)(1), (5); 12 C.F.R. § 226.6(a)(1), (2); *see also* 12 C.F.R. § 226.18(d) (closed-end finance charge disclosure requirements). The term 'finance charge' expressly includes "[p]remiums or other charges for insurance against loss of or damage to property . . . written in connection with a credit transaction." 12 C.F.R. § 226.4(b)(8). Although insurance premiums are not considered "finance charges" if the borrower is free to select the insurance carrier (12 C.F.R. § 226.4(d)(2)), this rule does not apply where a lender demands and force-places **unauthorized** insurance. *See Hofstetter II*, 751 F. Supp. 2d at 1128 (unauthorized "property insurance coverage written in connection with a loan triggers mandatory 'finance charge' disclosures"); *Bermudez v. First of Am. Bank Champion, N.A.*, 860 F.Supp. 580, 601 (N.D. Ill. 1994), *withdrawn pursuant to settlement*, 886 F.Supp. 643 (N.D. Ill. Mar 22, 1995) ("If a factfinder found such charges to be unauthorized, then it could also find that the charging of plaintiffs' accounts for the cost of that insurance . . . [was] a finance charge."); *Travis v. Boulevard Bank, N.A.*, 880 F.Supp. 1226, 1229-30 (N.D. Ill. 1995) ("Defendant's purchase of the allegedly unauthorized insurance and the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction" that "required new disclosures"); *Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740, at *5 (N.D. Ind. Mar. 16, 2006) ("Wells Fargo's actions in force-placing insurance on Plaintiffs' account may have triggered new disclosures"); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 n.3 (D. Minn. 2008). Even where the force-placement of insurance is authorized – which it was not here – "[t]he creditor may . . . be required to provide a new disclosure(s) under section 226.9(c)." 12 C.F.R. pt. 226, Supp. I, § 5(e), cmt. 1; *see also* 12 C.F.R. pt. 226, Supp. I, § 17(e), cmt. 1 (parallel provision applying to closed-end loans).

and accurate disclosures of loan terms.  As a result, any disclosures made by a lender to a borrower must accurately "reflect the terms of the legal obligation between the parties." 12 C.F.R. § 226.5(c)(3); *see also* 12 C.F.R. § 226.17(c) (relating to closed-ended loans).[8]  As set forth above, Defendant made misleading statements in violation of the TILA by sending flood insurance notices to Plaintiff and other borrowers that misstated borrowers' flood insurance obligations under their mortgages and federal law.  These misleading statements regarding borrowers' flood insurance obligations constitute a "departure from the mortgage documentation" and violate the TILA.  *Wulf*, 2011 WL 2550628, at *12; *see also Travis*, 880 F. Supp. at 1230 (finding TILA violation as "the result of Defendant's departure from the contract").

45.     The TILA violations set forth above occurred within one year of the commencement of this action.  To the extent that the violations described above occurred earlier, Plaintiff did not discover and did not have a reasonable opportunity to discover Defendant's violations until less than one year before this action commenced.  Prior to this time, Plaintiff had no reason or opportunity to complain about Defendant's TILA violations.

46.     Defendant systematically and pervasively engaged in similar violations of the TILA to the detriment of other members of the Putative Nationwide Class.

---

[8] This duty to make truthful and accurate disclosures is an ongoing duty, and applies to ***both*** subsequent disclosures and initial disclosures at the time of the transaction.  *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 & n.7 (9th Cir. 1996) (rejecting defendant's argument that duty to make accurate disclosures "only applies to disclosures before consummation of the transaction").  Where a creditor sends out notices, after the date of the transaction, which misstate the borrower's obligations, such notices give rise to liability under the TILA.  *See Hubbard*, 91 F.3d at 79 (defendant's "payment adjustment notices were required to reflect the loan agreement"); *Demando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) ("Because the Notice contained terms that were in violation of the credit agreement, the Notice violated Regulation Z.").

47.     Plaintiff and the Putative Nationwide Class have been injured and have suffered actual damages and monetary losses as a result of Defendant's TILA violations.

48.     As a result of Defendant's violations, Plaintiff and the Putative Nationwide Class are entitled to recover actual damages and a penalty of $500,000.00 or 1% of Defendant's net worth, as provided by 15 U.S.C. § 1640(a)(1)–(2).

49.     Plaintiff and the Putative Nationwide Class also are also entitled to recovery of attorneys' fees and costs to be paid by Defendant, as provided by 15 U.S.C. § 1640(a)(3).

**SECOND CLAIM FOR RELIEF**
**BREACH OF CONTRACT/ BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

50.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

51.     Defendant is the lender-in-interest to Plaintiff's Mortgage and is bound by the terms of his Mortgage.

52.     Plaintiff's Mortgage does not require flood insurance coverage in an amount greater than federal requirements or the amount of funds extended to him.

53.     Defendant breached the terms of Plaintiff's Mortgage by requiring Plaintiff to obtain and/or maintain flood insurance in excess of the amount required under his Mortgage, and by force-placing flood insurance in excess of the amount required under his Mortgage.

54.     Defendant also breached the implied covenant of good faith and fair dealing inherent in Plaintiff's Mortgage.

55.     Defendant owed Plaintiff and the Putative Nationwide Class a duty of good faith and fair dealing, by virtue of Defendant's contractual relationship with Plaintiff and the Putative Nationwide Class members.

56.     Defendant breached this duty by, among other things: (1) misrepresenting both federal requirements and contractual requirements regarding flood insurance, (2) demanding and/or force-placing flood insurance coverage in excess of the amount required by federal law or the relevant Mortgage Documents, and in excess of the amount required to protect Defendant's legitimate financial interests; (3) unreasonably exercising in bad faith any purported discretionary authority Defendant claims it was afforded under the loan and mortgage documents, and (4) imposing contractual requirements that did not exist or that exceeded the requirements disclosed in the relevant Mortgage Documents.

57.     Defendant willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) gaining unwarranted contractual and legal advantages, and (2) depriving Plaintiff and the Putative Nationwide Class of their contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase flood insurance coverage in excess of the funds extended to them.

58.     The foregoing breaches were willful and not the result of mistake or inadvertence.  On information and belief, Defendant systematically and pervasively required other borrowers to obtain flood insurance in excess of the amount required under their Mortgage Documents and in excess of the amount that Defendant could fairly and reasonably demand in good faith.

59.     As a direct result of Defendant's breaches of contract and breaches of the covenant of good faith and fair dealing, Plaintiff and the Putative Nationwide Class have been injured, and have suffered actual damages and monetary losses, in the form of increased insurance premiums, interest payments, and/or other charges.

60.     Plaintiff and the Putative Nationwide Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK DECEPTIVE PRACTICES ACT ("DPA")**
**N.Y. Gen. Bus. Law § 349,** *et seq.*

61.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

62.     The DPA provides that "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state are hereby declared unlawful."

63.     Defendant's actions are subject to the requirements of the DPA.  Defendant provided a line of credit and related services to Plaintiff and the members of the Putative New York Class for personal, family, and/or household purposes.

64.     Defendant pervasively violated the DPA during the Class Period, and continues to violate this statute, by virtue of its unfair, deceptive, and fraudulent practice of demanding and/or force-placing excessive and unnecessary flood insurance on property owned by Plaintiff and Putative New York Class members in amounts greater than required by law, greater than Defendant's financial interest in their property, and contrary to the amounts agreed upon in the relevant loan and mortgage documents, and by intentionally misleading Plaintiff and other Putative New York Class members to believe that such amounts of insurance coverage are required.

65.     Defendant violated the DPA by, *inter alia*:

a)  requiring Plaintiff and the Putative New York Class to purchase and/or maintain flood insurance in amounts greater than necessary to secure the amount of funds extended to them;

b)  fraudulently and deceptively misrepresenting the amount of flood insurance that Plaintiff and the Putative New York Class are required to maintain pursuant to federal law and/or their Mortgage Documents;

c)  deceptively representing to Plaintiff and Putative New York Class members that Defendant's force-placement of excessive flood insurance coverage on their property is required by federal law and/or their Mortgage Documents;

d)  materially misrepresenting to Plaintiff and Putative New York Class members that federal law and/or their mortgages conferred obligations on them that they did not have; and

e)  engaging in other unconscionable and deceptive conduct as set forth in the Complaint.

66.   Defendant engaged in such violations for the purpose of inducing and/or forcing Plaintiff and the Putative New York Class to procure unnecessary and/or excessive amounts of flood insurance.

67.   Defendant willfully engaged in such conduct and knew that it violated the DPA or showed reckless disregard for whether it violated the DPA.

68.   As a result of Defendant's violations of the DPA, Plaintiff and the Putative New York Class have been injured and have suffered actual damages and monetary losses in the form of increased insurance premiums, interest payments, and/or other charges.

69.     Plaintiff and the Putative New York Class members are entitled to actual damages, statutory damages, treble damages, injunctive relief, attorneys' fees and costs, and any other remedies available under the DPA or in equity, for Defendant's violations of the DPA.  *See* N.Y. Gen. Bus. Law § 349(h).

## **PRAYER FOR RELIEF**

70.     WHEREFORE, Plaintiff, on behalf of himself and the Putative Classes, prays for relief as follows:

a)  Determination that this action may proceed as a class action under Rules 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure;

b)  Designation of Plaintiff's counsel as counsel for the Putative Classes;

c)  Designation of Plaintiff as class representative for the Putative Classes;

d)  Issuance of proper notice to the Putative Classes at Defendant's expense;

e)  Judgment that Defendant's actions violate the Truth and Lending Act;

f)  Judgment that Defendant's actions violate New York General Business Law § 349, *et seq*.;

g)  Judgment that Defendant breached its contracts with Plaintiff and the Nationwide Class and its duty of good faith and fair dealing to Plaintiff and the Nationwide Class;

h)  Judgment that Defendant acted willfully in deliberate or reckless disregard of applicable law and the rights of Plaintiff and other borrowers;

i)   Awarding appropriate equitable relief, including but not limited to an injunction requiring Defendant to reverse all unlawful, unfair, or otherwise improper charges for insurance coverage, allowing customers to close loans or credit lines without first paying premiums for flood insurance that were not necessary or required by law, and ordering Defendant to cease and desist from engaging in further unlawful conduct in the future;

j)   Actual damages, statutory damages, treble damages, punitive damages, penalties, and interest;

k)   Reasonable attorneys' fees and costs; and

l)   Other and further relief, in law or equity, as this Court may deem appropriate and just.

### **DEMAND FOR JURY TRIAL**

71.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Putative Classes demand a trial by jury.

Respectfully submitted,

Dated:  December 6, 2011

**NICHOLS KASTER, PLLP**

*/s/ Kai Richter*
Kai Richter, MN Bar No. 0296545*
80 South Eighth Street, Suite 4600
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
Email: krichter@nka.com
*admitted pro hac vice*

AND

Chip Muller (#7686)
Muller Law, LLC
155 South Main Street, Suite 101
Providence, RI 02903
Telephone: (401) 256-5171
Facsimile: (401) 256-5178
Email: chip@chipmuller.com

**ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 6, 2011, a copy of the forgoing *First Amended Class Action Complaint* was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Kai Richter*
Kai Richter